**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Charles E. Lakin and CELCO, Inc., ) | No. CV 04-1703-PHX-MHM |
| Appellants, ) | Bankruptcy No. 97-001108-YUM-RTB |
| vs. ) | **ORDER** |
| Cameo Development Company, ) | |
| Appellee. ) | |

Appellants Charles E. Lakin and CELCO, Inc., have appealed from the Judgment entered by the Honorable Redfield T. Baum, Judge, United States Bankruptcy Court, District of Arizona, entered on August 12, 2004, setting the valuation of indebtedness of debtor Cameo Development Company. Briefs have been filed by Appellants and the Trustee. (Doc. 14, 19 & 21). This appeal has been submitted for review on the briefs without oral argument. This Court's jurisdiction has been invoked pursuant to 28 U.S.C. § 158(a).

I.

Background.

Cameo Development Company is a general partnership whose members include Roland and Dorothy Ward individually.  Appellant Celco, Inc., is a corporation primarily controlled and managed by Charles E. Lakin.  In 1995, the parties entered into a business venture to develop certain real property in Yuma, Arizona into residential subdivisions.

1   These subdivisions have been referred to as Victoria Meadows, Dunes I and Dunes III.  It

2   appears that Appellants were to provide Cameo Development with certain necessary

3   financing for the projects. This loan financing was secured by the subject real estate and

4   other property.  In or about mid-1997, differences arose between the parties, funds were not

5   advanced by Appellants, and Cameo Development was unable to meet financial obligations

6   with respect to the projects.

7           In the fall of 1997, Cameo Development filed for bankruptcy relief.  After filing the

8   bankruptcy petition, Cameo Development petitioned the Bankruptcy Court for permission

9   to borrow $ 425,000 from Mortgages Limited so it could continue its business operations.

10  Had this deal been finalized, Mortgages Limited would have become secured by a "super-

11  priority" first lien on Victoria Meadows. Appellants objected to this financial arrangement

12  and proposed to loan the money to Cameo Development instead. The parties reached an

13  agreement memorialized in a "Stipulation for Use of Cash Collateral, etc." ("the stipulation")

14  (Record 10)[1] which was approved by the Bankruptcy Court at a hearing on November 5,

15  1997.  (Record 6). This stipulation contained provisions concerning the parties' pre-petition

16  financing agreements as well as their post-petition loan agreement. For example, the

17  stipulation described the parties' pre-petition loan agreements and the debt obligations that

18  remained outstanding as of September 30, 1997.  It also set forth the terms of the post-

19  petition $425,000 loan, including applicable interest rates, default provisions and late

20  charges, and contained provisions relating to loan costs, hold backs and collateral. The

21  stipulation further contained provisions relating to post-petition loan administration such as

22  payments to APS, payments by Appellants to pay the debtors' post-petition overhead and

23  payroll, payments to Yuma Title and Trust, etc.  Another section of the stipulation recounted

24  the parties' agreement regarding adequate protection including instances in which property

25

26

27          [1]Documents in the record on appeal have been cited by tab number, followed by the

28  specific page number as appropriate.

1  was to be conveyed to Appellants as security. The final section of the stipulation recited the

2  parties' agreement on related miscellaneous matters.

3        A dispute subsequently arose in which Appellants claimed that the debtors had

4  breached the terms of the stipulation. Appellants did not advance the full amount of the post-

5  petition loan to Cameo Development. In late February 1998, the Bankruptcy Court declared

6  Cameo Development in default under the terms of the stipulation. The proceedings advanced

7  toward a  determination of the fair market value of a number of the properties subject to

8  Appellants' liens, including properties listed in the stipulation.  These properties had been

9  reacquired by Appellants and included the following:

10           56 Lots in the Victoria Meadows subdivision
         48 Lots in the Dunes III subdivision

11           13 Lots in the Dunes I subdivision
         Lots 5 and 64 in the Dunes I subdivision

12           Lot 68 in the Dunes I subdivision (former residence of Mr. and Mrs.
         Ward)

13           Lots 28, 35 and 50 in the Victoria Meadows subdivision

14  Meanwhile, the case proceeded with pleadings and hearings related to a new plan of

15  reorganization submitted by Cameo Development.

16        On January 10, 2002, the Bankruptcy Court issued an Order disallowing Appellants'

17  filed proofs of claims and appointing a Chapter 11 Trustee with full powers. (Record 144).

18  Appellants' "recalculated debts" as claimed totaled $3,706,175.11 as of October 1, 2001.

19  (id.). The Court observed in the Order that Appellants had foreclosed upon or had otherwise

20  received all of their collateral for the identified debts, including the Wards' personal

21  residence.  The Bankruptcy Court also referred to the numerous past hearings that had been

22  held concerning the "proper credits" to be given for collateral transferred by the debtor to

23  Appellants.  The Court noted that "[a] significant portion of the amounts now claimed due

24  by the Lakin Group are based upon its asserted rights to compound interest on its claims

25  (notwithstanding the transfer to it of all its collateral), to charge default interest and late fees,

26  to charge a 12% administrative fee, to accrue interest on amounts it in fact had not advanced

27  when it began accruing interest therein, and adding the deficiencies on its pre-petition debts

28  to its post-petition loan." (id.).  The Bankruptcy Court disallowed Appellants' claims based

1   on a "total lack of credibility" as to the "claimants and debtors'" regarding the amounts
2   claimed and "the manner in which [the Lakin Group] [had] interpreted the stipulation to
3   inflate [their] claims to the detriment of the other creditors and the lack of effective notice
4   to the other creditors regarding such rights under the stipulation." (id.). The Bankruptcy
5   Court directed the Trustee to perform a calculation of Appellants' debt claims.

6        A formal order appointing Michael W. Carmel as Trustee was entered on February
7   12, 2002. (Record 150). After meeting with the parties and arriving at an indebtedness total
8   of $379,688.05 as of October 19, 1999, the Trustee filed a motion for determination of the
9   amount and declaration in support. (Record 163 & 166). Cameo Development, through its
10  principal Mr. Ward, filed a declaration of total indebtedness amount which objected to
11  certain of the amounts set forth in the Trustee's declaration. (Record 167). Mr. Thomas L.
12  Pribil, on behalf of Appellants, filed a declaration in which he determined the debt to be at
13  least $5,631,292.18 as of June 1, 2003. (Record 168).

14       The Bankruptcy Court held an evidentiary hearing on the debt issues on November
15  18, 2003. (Record 170). Mr. Pribil on behalf of Appellants submitted a supplemental
16  declaration in connection with this hearing. (Record 172).

17       After receiving briefing from the parties, the Bankruptcy Court issued an Order on
18  April 8, 2004 granting the Trustee's debt determination of $379,688.05. (Record 177). This
19  Order can be summarized as follows. The Bankruptcy Court initially noted that Appellants
20  had claimed they were owed over $3.8 million and that the claims of the other creditors
21  exceeded $800,000. The Court observed that resolution of Appellants' claim would have a
22  material impact on the rights of the other creditors, that is, if Appellants succeeded, they
23  would receive approximately 80% of the funds to be paid and if the Trustee's claim was
24  allowed, the other creditors stood to receive 66 % of the fund. The Bankruptcy Court
25  determined that this dramatic difference in shares had resulted from the court-approved
26  stipulation which by its terms allowed Appellants to accrue default charges on all of its debts.
27  Unless the stipulation was modified, Appellants would probably be allowed the range of
28  charges they had claimed.

1   The Bankruptcy Court next discussed as follows certain provisions of the stipulation:

2   The significant term of the stipulation was the right of Celco/Lakin to accrue default interest on its entire debt. The
3   stipulation also collateralized all of the Celco/Lakin debts (pre-petition and post-petition) and provided for the accrual of
4   interest on all debts post-petition. Notably, Celco/Lakin had been the debtor's lender pre-petition [and] had held liens on
5   virtually all of the debtor's assets plus liens on the residences of the debtor's principals. The post loan efforts of the debtor failed
6   and Celco/Lakin have foreclosed on all of their collateral including the residences. Under the post petition loan,
7   Celco/Lakin only advanced the debtor less than $100,000.

8   (Record 177).

9   The Bankruptcy Court concluded that the "equities" required modification of the

10  stipulation regarding Appellants' right to accrue interest post-petition on its entire debt. The

11  Court's several reasons in support of this conclusion were stated as follows. The referenced

12  provision of the stipulation had not been adequately noticed to the other creditors or

13  sufficiently disclosed to the Court. The effect on the other creditors was significant.

14  Appellants had liens on virtually all of the debtors' assets, including the residence of the

15  debtors' principals, and these liens had been foreclosed to Appellants' economic benefit. The

16  right to accrue interest on unsecured debt post-petition was contrary to an express provision

17  of the Bankruptcy Code (11 U.S.C. § 502) and the bankruptcy premise of equality of

18  treatment of similar creditors.  This referenced provision of the stipulation had not been a

19  term of the potential post-petition loan agreement between Cameo Development and

20  Mortgages Limited even though Appellants had claimed to be providing the same deal.

21  Cameo Development had asserted a claim against Appellants and Appellants should not

22  benefit to the extent they may be liable on the claim.  The balance of the stipulation remained

23  intact thereby preserving the essence of the agreement for Appellants' benefit. The

24  Bankruptcy Court stated in the Order that it was modifying the stipulation to delete the right

25  of Appellants to accrue post-petition interest on all of their debts against Cameo

26  Development and to adopt the Trustee's debt calculation amount.  (Record 177).

27  On May 12, 2004, Appellants filed a motion for new trial. (Record 183).  Appellants

28  contended that the modification of the stipulation violated their rights which had become

1  vested, citing In re Lenox, 902 F.2d 737 (9th Cir. 1990), noting that the Court in the past had
2  denied the debtors' repeated attempts to vary the stipulation, and that no "special
3  circumstances" justified the modification.  Appellants also contended that they were claiming
4  over five million dollars as opposed to the $3.8 million discussed in the Order, that the
5  Bankruptcy Court in the past had directed them to calculate the debt pursuant to the terms
6  of the stipulation, and that they had advanced more than $100,000 to the debtors under the
7  post-petition loan. Appellants challenged other provisions of the Order and argued that the
8  ruling modified terms of the stipulation other than the deletion of the right of Appellants to
9  accrue post-petition interest on all of their debts.  Appellants identified specific additional
10 modifications to the stipulation as including disallowing all Dunes III development costs,
11 changing the earlier determination of the Victoria Meadows' value, changing the value of the
12 Wards' residence, and in other respects.

13         On May 18, 2004, the Bankruptcy Court held a hearing on Appellants' motion for new
14 trial. (Record 185). The Court reviewed various of Appellants' objections and indicated that
15 additional amounts of indebtedness would be allowed but that the balance of the motion was
16 denied.  (Record 185 at 29).

17         On or about May 27, 2004, Appellants filed a motion to alter or amend the Judgment
18 stating that the minute entry of the May 18, 2004 hearing was not a "final" order and that
19 additional information was necessary on the Yuma Title funds discussed at the hearing.
20 (Record 186).  Appellants filed an additional submission that contained relevant information
21 on this issue.  (Record 187). On June 10, 2004, Cameo Development requested a status
22 hearing so its objections could be heard regarding the proposed additional amounts that had
23 been discussed at the May 18th hearing.  (Record 188).  Another hearing was held on July 7,
24 2004 as reflected by minute entry. (Record 192 & 193).

25         The Bankruptcy Court filed its final Order and Judgment on the indebtedness amount
26 on August 6, 2004.  (Record. 193). The Court concluded that Appellants' indebtedness claim
27 was $379,688.05 as determined at the April 8th hearing, plus the following amounts:
28 $235,712.89 for the Victoria Meadows subdivision paybacks; $ 222,621.00 as credit to the

1    Victoria Meadows loan for Lots 31 and 36; $75,000.00 as additional value for the Wards'

2    residence; and, $29,601.09 as payment for the loss of the use of funds placed in escrow by

3    Yuma Title Company. (Record 193). This Order and Judgment were entered on the docket

4    on August 12, 2004. Appellants timely filed a notice of appeal on August 13, 2004. (Record

5    194).

6                                              II.

7                                          Discussion.

8         Appellants contend that the Bankruptcy Court erred in its determination of the amount

9    they are owed from Debtor Cameo Development. Appellants contend that the majority of

10   their argument relates to the Bankruptcy Court's modifications and changes to the

11   "Stipulation for Use of Cash Collateral, etc." as well as the application of the stipulation's

12   provisions regarding the amounts. Besides asserting error in the modification of the

13   stipulation, Appellants have claimed error as to certain identified monetary amounts they

14   contend were not credited to them, e.g., valuation issues related to "fair market value" of

15   certain properties, the Dunes III development charges allegedly incurred by Appellants, the

16   Lot 35 construction loan, other construction loan charges, post-petition loan holdbacks and

17   loan rate, the Victoria Meadows loan balance, continuing interest, among others

18        The Bankruptcy Court's findings of fact shall not be set aside unless clearly erroneous

19   and its conclusions of law are reviewed de novo. In re Allen, 300 F.3d 1055 (9th Cir. 2002).

20   A motion to alter or amend the judgment is appropriate to correct manifest errors of fact or

21   law or to present newly discovered evidence. In re Oak Brook Apartments of Henrico

22   County, Ltd., 126 B.R. 535, 536 (S.D.Ohio 1991). Denial of such motions are reviewed

23   under an abuse of discretion standard. Carter v. United States, 973 F.2d 1479, 1488 (9th Cir.

24   1992).

25        Appellants in certain  respects have provided insufficient briefing in support of their

26   arguments. For example, Appellants contend that the Bankruptcy Court erred in its valuation

27   determination by not applying provisions of the stipulation. More specifically, Appellants

28   contend that the stipulation contained "detailed provisions ... for handling all of the properties

1   except the 56 Victoria Meadows Lots and their disposition" and that the Bankruptcy Court

2   "erred in ignoring those provisions and turning instead to a fair market value analysis for all

3   of the properties." (Doc. 14 at 11). Other than to provide the record or appendix citation for

4   the stipulation, Appellants have not directed this Court to the specific provisions of the

5   stipulation that deal with the issue raised on appeal. Appellants also have directed the Court

6   to two hearings on December 18, 2000 (Record 118) and March 26, 2001 (Record 126) at

7   which the valuation issues were discussed. (id., at 9). Appellants have cited to one of these

8   hearing transcripts regarding their claim of error by the debtor's appraiser, Mr. Wirth. (Doc.

9   14 at 12).

10      The transcripts of these hearings are included in the record and each is comprised of

11  approximately 190 pages. (Record 118 & 126). Appellants have not directed this Court to

12  any specific page of these transcripts where the valuation issues "were discussed." See

13  Suncoast Airlines, Inc. v. Atkinson & Mullen Travel, Inc., 188 B.R. 56, 58 & n.2 (S.D.Fla.

14  1994)(noting need to cite to specific pages of the record in bankruptcy appeal).

15      As to the valuation issue, it appears that the Bankruptcy Court ruled on July 17, 2000

16  that the stipulation should be interpreted to mean that a fair market value defense applied to

17  any real property upon which Appellants held a deed of trust to secure their debt. (Record

18  110). In a later ruling on July 26, 2001, the Bankruptcy Court held that the "best evidence"

19  of value of certain parcels of real property, including the Victoria Meadows Lots and Lot 35

20  Victoria Meadows, was what Appellants had indicated they were willing to pay at the

21  trustee's sale of the property. (Record 133). The Bankruptcy Court rejected Appellants'

22  argument that the value of the Victoria Meadows Lots was $1,437,600.81, which was the

23  amount of the secured creditor's bid at the trustee's sale. The Bankruptcy Court reiterated this

24  ruling at the hearing on May 18, 2004, stating that it was "unfair" to "nibble around the

25  edges" of the previous ruling. (Record 185 at 18-20). To the extent that Appellants'

26  argument is based on some other ground, it has not been clearly presented. Appellants have

27  not demonstrated that the Bankruptcy Court's conclusion was clearly erroneous.

28

1    Turning to Appellants' arguments relating to the Bankruptcy Court's modification of

2    the stipulation, the Court has reviewed what appear to be the relevant portions of the six-

3    volume record as well as the information provided in the parties' record appendices.

4    Appellants' several claims of error regarding the debt amounts appear to be subsumed within

5    their primary argument that the Bankruptcy Court erred in modifying the stipulation.

6    The Court has set out in the above background facts the Bankruptcy Court's rationale

7    for reaching its conclusion on the debt amounts to be credited to Appellants.  As that

8    discussion indicates, in deciding to appoint a Trustee, the Bankruptcy Court essentially

9    determined that Appellants had not been credible as to the amounts claimed or in the manner

10   in which they had "interpreted the stipulation to inflate [their] claims to the detriment of the

11   other creditors and the lack of effective notice to the other creditors regarding such rights

12   under the stipulation." (Record 144).

13   Many of the challenged amounts listed in Appellants' brief were discussed during the

14   evidentiary hearing on November 18, 2003.  (See Record 170 at 10-14, 45-46 [Appellants'

15   alleged development costs associated with Dunes III]; id., at 23-24 [the amount charged

16   regarding the Lot 35 construction loan]; id., at 25-26 [construction loan charges as 10% of

17   the principal amount as opposed to 10% of the outstanding balance at the time of the credit

18   under the terms of the stipulation]; id., at 26 [items 1-4 listed in the stipulation at page 6,

19   paragraph B]; id., at 28 [the post-petition loan rate]; id., at 29 [Lakin loan close-out]; id.,

20   29 [Victoria Meadows loan balance]; and, id., at 33 [the post-petition loan rate]. The

21   challenged amounts raised by Appellants on this appeal (items B through K) were addressed

22   in Appellants' post-hearing briefing.  (Record 173).

23   The Bankruptcy Court thus had before it Appellants' arguments in support of the

24   claimed amounts. The Bankruptcy Court rejected these claimed amounts based on the

25   "equities" which required modification of the parties' stipulation.  The Bankruptcy Court's

26   decision was premised in part on the fact that Appellants had foreclosed on the properties,

27   including the debtors' residence, and because other creditors otherwise would be significantly

28   affected.  The Bankruptcy Court specifically indicated that modification of the stipulation

1   to delete the right of Appellants to accrue post-petition interest on all of their debts and to

2   adopt the Trustee's debt calculation amount was appropriate.

3        At the May 18, 2004 hearing, the Bankruptcy Court rejected any claim for the

4   development costs on Dunes III because the issue had been tried and ruled upon. (Record 185

5   at 20).  The Bankruptcy Court was inclined to reject other of Appellants' claims because they

6   were not clear or there were no grounds for revisiting previous decisions.  (Record 185 at

7   10).  The Bankruptcy Court recognized "the unjustness" in accepting Appellants' claims as

8   asserted based on $5.6 million because Appellants "would receive almost 90% of the

9   unsecured recovery" while the other creditors were "not accruing all these charges." (id., at

10  13).  The Bankruptcy Court ultimately increased Appellants' indebtedness amount to

11  $942,623.03.  (Record 193).

12       Both parties have cited In re Lenox, 902 F.2d 737, 739-40 (9th Cir. 1990), in which

13  the Court of Appeals for the Ninth Circuit recognized that bankruptcy courts have the power

14  to reconsider, modify, or vacate a previous order so long as no intervening rights have

15  become vested in reliance on such order.  The bankruptcy court can even set aside a

16  stipulation entirely if the interest of justice so requires and if the parties can be restored to

17  the positions they occupied before they entered the stipulation. Id.  Although Fed.R.Civ.P.

18  60(b), made applicable to bankruptcy cases under Bankruptcy Rule 9024, provides that a

19  court may relieve a party from a final order upon motion, it does not prohibit a bankruptcy

20  judge from reviewing, *sua sponte*, a previous order.  In re Lenox, 902 F.2d at 740 (citing 11

21  U.S.C. § 105(a)).[2]

22

23

24       [2]Title 11, United States Code, section 105(a) provides as follows:
         The court may issue any order, process, or judgment that is
25       necessary or appropriate to carry out the provisions of this title.
         No provision of this title providing for the raising of an issue by
26       a party in interest shall be construed to preclude the court from,
         sua sponte, taking any action or making any determination
27       necessary or appropriate to enforce or implement court orders or
         rules, or to prevent an abuse of process.
28

1    Rule 60(b) motions are addressed to the sound discretion of the trial court and will not
2    be reversed absent some abuse of that discretion. In re Martinelli, 96 B.R. 1011, 1012 (9th
3    Cir. BAP 1988).  To find an abuse of discretion, this Court "must have a definite and firm
4    conviction that the [bankruptcy] court ... committed a clear error of judgment in the
5    conclusion it reached. ..."   In re Nunez, 196 B.R. 150, 155 (9th Cir. BAP 1996)(citation
6    omitted).

7    In this case, upon consideration of the testimony and all relevant information and
8    documents presented, the Bankruptcy Court determined that the stipulation should be
9    modified based on the equities of the case. The Bankruptcy Court's concern was that
10   Appellants' debt calculations had been inflated and were not credible,  and that allowing the
11   amounts under the stipulation would work to the detriment of other creditors. The
12   Bankruptcy Court noted at the conclusion of the November 18, 2003 hearing that the "pay-
13   out" amount in this case would be between $500,000 and $1 million and questioned why it
14   would be "just and equitable" for Appellants to receive 90% and "everybody else" 10% if it
15   accepted Appellants' claim of $5.6 million. (Record 170 at 52-53). "Bankruptcy Judges have
16   a fiduciary obligation to protect creditors, ..", "must make such determinations against a
17   background of all facts necessary for an 'intelligent and objective opinion,' and have an
18   independent duty to examine settlements even where the creditors and other parties in interest
19   are silent." Maxwell Newspapers, Inc. v. Travelers Indemnity Company, 170 B.R. 549, 550
20   (S.D.N.Y. 1994)(affirming bankruptcy judge's decision to vacate a stipulation the court had
21   approved two years earlier). The Bankruptcy Court did not abuse its discretion regarding its
22   ruling as to the stipulation.

23   Based upon review of the record, this Court is satisfied that the Bankruptcy Court
24   found sufficient "special circumstances" that warranted modification of the stipulation.
25   Moreover, the Bankruptcy Court sought to preserve the remainder of the stipulation's terms
26   for the benefit of Appellants.  In addition, as evidenced by the Bankruptcy Court's remarks,
27   other of Appellants' claims were rejected because they were not clear or there were no
28   grounds for revisiting previous decisions. Appellants have not demonstrated that the

1  Bankruptcy Court's findings were clearly erroneous, that its conclusions were based on a
2  misapplication of the applicable law, or that it abused its discretion.
3        **Accordingly**,
4        **IT IS ORDERED** that the Order and Judgment of the Bankruptcy Court filed on
5  August 6, 2004 is affirmed.
6        DATED this 26th day of September, 2005.
7
8
9  _____
10                    Mary H. Murgula
                United States District Judge
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28